IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| v. § | |
| § | |
| JEFFREY PAUL MADISON (7) § | Case No. 6:22-CR-3-JDK-JDL |
| TODD DEAN COOK (8) § | |

**JEFF MADISON AND TODD COOK'S MOTION TO DISMISS THE INDICTMENT**

Jeff Madison and Todd Cook move to dismiss the Indictment because it was returned more than five years after the end of the conspiracy alleged against them.

## Introduction

The Indictment fails to allege any overt act on the part of Madison, Cook, or their unindicted employer Little River Healthcare ("LRH") that occurred within the five-year statute of limitations. This is no accident or oversight. The government knows that Messrs. Madison and Cook, as well as their employer Little River Healthcare ("LRH"), terminated their relationships with the other defendants in December 2016, more than five years before the Indictment and that they should not be charged with a crime. But, in a misguided attempt to avoid the statute of limitations, the Government has improperly joined its allegations against Madison and Cook with allegations of a completely separate conspiracy that allegedly existed between a competitor hospital to LRH and the remaining defendants and which lasted into 2017.[1] The government attempts to rely on the overt acts in furtherance of that conspiracy to avoid the statute of limitations running against the first conspiracy alleged against LRH. Because that second conspiracy is

---

[1] Messrs. Madison and Cook have filed a separate Motion to Sever (Dkt. 397). They incorporate by reference those arguments and facts as if set forth fully herein.

improperly joined and must be severed, the overt acts attributable to that separate conspiracy cannot suffice as to the conspiracy alleged against Madison and Cook. The Court should dismiss the charges as to Madison and Cook because the Indictment was brought more than five years after the conspiracy they are alleged to have participated in ended.

## Relevant Facts

On January 13, 2022, a grand jury returned an Indictment charging Jeff Madison, Todd Cook, and others with a single count of Conspiracy to Commit Illegal Remunerations in violation of 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b (the "AKS"). (Dkt. 1.)

In support of the AKS theory, the Indictment alleges LRH paid marketers, who then paid managed services organizations ("MSOs"), who then paid physicians in exchange for those physicians referring laboratory samples to LRH. (*Id*., Count 1 ¶¶ 7-64.). Mr. Madison was the Chief Executive Officer of LRH. Mr. Cook was the Director of Lab Services for LRH.

The last overt act alleged against LRH, Madison and Cook is a payment from LRH to the MSO named "Ascend" on December 7, 2016. (*Id*., Count 1 ¶ 107.) There are no further payments by LRH alleged by the government, nor does the government allege that Madison and Cook made any payments to Ascend or any other MSO or doctor. *Id*. The government notably omits from its allegations that on December 22, 2016, LRH notified Ascend in writing that it was terminating LRH's business relationship with Ascend. (*See* December 22, 2016, Letter, attached as Exhibit A.) All such events took place more than five years before the indictment on January 13, 2022.

The Indictment goes on to allege that Ascend MSO and the marketers it worked with entered a new arrangement with one of LRH's competitors – Stamford Hospital. *Id*. at ¶¶ 65 – 204. The government alleges Ascend MSO, the marketers, and Stamford Hospital continued their alleged activities well into 2017. *Id*. The government does not allege LRH, Madison or Cook

interacted with, supported, or were even aware of the alleged Stamford conspiracy. *Id*. Any alleged conspiracy involving LRH, Madison, and Cook was completed by December 2016.

## Argument and Authorities

**A. The applicable statute of limitation is five years.**

It is unlawful to conspire with another to commit an offense against the United States and do an act to effect the conspiracy's object. 18 U.S.C. § 371. However, any non-capital section 371 conspiracy charge is subject to a general five-year statute of limitations. 18 U.S.C. § 3282(a).

**B. The statute of limitations begins to run after the last overt act in furtherance of the conspiracy, or when a participant withdraws from the conspiracy, whichever is earlier.**

"In a conspiracy prosecution brought under section 371 the government in order to avoid the bar of the limitation period of § 3282 must show the existence of the conspiracy within the five years prior to the return of the indictment, and must allege and prove the commission of at least one overt act by one of the conspirators within that period in furtherance of the conspiratorial agreement." *U.S. v. Davis*, 533 F.2d 921, 926 (5th Circuit 1976) (vacating convictions on conspiracy charge because conspiracy was completed prior to five years before indictment); *U.S. v. Ongaga*, 820 F.3d 152 (5th Cir. 2016) (citing *Davis* and vacating convictions of two defendants in marriage fraud conspiracy case).

The statute of limitations for a conspiracy charge can also begin to run as to a particular member of the conspiracy "when the defendant withdraws from the conspiracy." *United States v. Heard*, 709 F.3d 413, 427 (5th Cir. 2013) (citing *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464 (1978)). Determining when a party withdraws from a conspiracy is crucial to a statute of limitations analysis because the timing of the withdrawal determines which crimes a conspirator may remain liable for. *United States v. Salazar*, 751 F.3d 326, 330 (5th Cir. 2014). Notably, this

determination helps to guard a defendant's liability against any post-withdrawal acts committed by former co-conspirators. *Id.* at 331. If a defendant adequately withdraws before the required overt act occurs, the defendant is free from liability for any acts that follow. While withdrawal itself is not a complete defense to a conspiracy charge, it can become a complete defense when coupled with a statute of limitations defense. *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 837 (11th Cir. 1999).[2]

An effective and valid withdrawal from a conspiracy requires a deliberate attempt to disassociate from the unlawful enterprise. *United States v. Hoffman*, 901 F.3d 523, 545 (5th Cir. 2018). A defendant "must show that that he has committed affirmative acts inconsistent with the object of the conspiracy that are communicated in a manner reasonably calculated to reach conspirators." *Heard*, 709 F.3d at 428 (quoting *United States v. Mann*, 161 F.3d 840, 859–60 (5th Cir. 1998)).

In *United States v. Arias*, a physician was being paid to submit false diagnoses of COPD as part of a scheme to defraud the Medicare system. 431 F.3d 1327, 1339 (11th Cir. 2005). After being indicted, the physician, Dr. Sarduy, produced evidence that he had sent a letter expressing his intent to withdraw from the scheme. *Id.* at 1341. Coupled with the letter, which was received by the alleged co-conspirators, Dr. Sarduy discontinued his role and took no further actions consistent with involvement in the conspiracy. *Id.* While the *Arias* case focused on a jury instruction regarding withdrawal, it is key to note that the 11th Circuit judge concluded there was

---

[2] For defendants that never withdraw from a conspiracy, the statute of limitations begins to run when the conspiracy ends. For statutes such as 18 U.S.C. § 371, which require an overt act in furtherance of the conspiracy, that means the statute of limitations begins to run on the date of the last overt act. *See Fiswick v. United States*, 329 U.S. 211 (1946); *United States v. Butler*, 792 F.2d 1528 (11th Cir. 1986). An overt act is "an act performed to effect the object of a conspiracy, although it [may] remain separate and distinct from the conspiracy itself." *United States v. Romans*, 823 F.3d 299, 310 (5th Cir. 2016) (quoting *United States v. Pomranz*, 43 F.3d 156, 160 (5th Cir. 1995)).

enough evidence for a jury to infer that affirmative steps were taken to withdraw from the conspiracy and that a statute of limitations defense was viable. *Id.* at 1431–32.

The simple act of closing a bank account that was once involved in a conspiracy has been found to be enough to constitute a valid withdrawal. *United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988). In *Nerlinger*, according to the court, the defendant "unquestionably disavowed the conspiracy when he resigned from and closed the … account." *Id.* In closing the account, the defendant foreclosed his continuing role and relinquished any claim to profits. *Id.*

**C. The Indictment alleges two separate conspiracies, and the alleged conspiracy involving LRH ended in December 2016.**

While the government attempts to paint this as one conspiracy, the Indictment clearly describes two separate conspiracies alleged in the related Motion to Sever. The first alleged conspiracy, involving LRH, runs from 2015 until December 2016. *See* Indictment, ¶¶ 7 – 64 and 105 - 126.

The Indictment sets forth the overt acts attributable to the various alleged conspirators. Paragraphs 105 and 106 describe the payments between LRH and the entity "APC" (later known as "APM", and for ease of reference in this motion, "Ascend"). The Indictment alleges that LRH and APC entered into a written agreement on July 1, 2015. Indictment, ¶ 105. The Indictment then alleges that LRH made a series of payments to APC pursuant to that agreement. *Id.* at ¶ 105. The last payment by LRH to Ascend – the last alleged overt act by LRH, Madison, or Cook – was made on December 7, 2016. *Id.* At that point, the conspiracy alleged against LRH (and thereby Madison and Cook) ended.

A second and separate conspiracy between the marketers and Stamford Hospital – a competitor to LRH – began in mid-2016 and continued after LRH terminated its relationship with Ascend in December 2016. *See* ¶¶ 65 – 104 and 126 - 147. Indeed, the portion of the Indictment

spent describing this second conspiracy is wholly devoid of any mention of LRH. [3] *Id*. The Indictment attempts to spin this fact by alleging that "In light of the success of the kickback scheme, a number of LRH's coconspirators agreed to continue the MSO kickback scheme with another Texas hospital." *See* Indictment, ¶ 65. But the word "continue" is misleading. Indeed, as the timing of the alleged overt acts evidences, and as discovery produced by the government has made clear, this was the end of one alleged conspiracy and the beginning of a new one. The co-conspirators affirmatively decided to terminate their relationship to LRH – and thus the alleged conspiracy with LRH -- and begin working with Stamford Hospital.

This joining of separate conspiracies for the purpose of avoiding the running of the statute of limitations also is an improper joinder resulting in significant prejudice to Messrs. Madison and Cook. Although the government goes on for many more paragraphs to describe many other overt acts, those acts relate to a separate conspiracy – the alleged Stamford Hospital conspiracy. Those overt acts cannot serve to overcome the five-year statute of limitations that bars prosecution of Madison and Cook for the alleged LRH conspiracy.

**D. If there was any doubt the LRH conspiracy ended with LRH's last payment to Ascend, LRH followed that payment with a letter terminating its relationship with Ascend and never paid Ascend again – effecting a complete withdrawal from any conspiracy.**

While the face of the Indictment makes clear the LRH conspiracy ended in December 2016 with the last payment from LRH to Ascend and the marketers and doctors moving to the alleged Stamford conspiracy, it also omits an important fact: LRH terminated the written agreement with Ascend via written notice on December 22, 2016. (*See* Exhibit A.) Thus, even if the last alleged overt act of LRH's payment to Ascend on December 7, 2016, does not suffice to fix the conspiracy

---

[3] That is, other than a passing reference to the fact that Robert O'Neal and others secretly stole LRH financial information and used that information to entice Stamford into the alleged competing conspiracy.

outside the five-year statute of limitations, LRH's affirmative withdrawal on December 22, 2016, does. Importantly, LRH never paid Ascend after sending the December 22, 2016, termination letter, thus precluding any claim that the termination letter was not a full-throated withdrawal. Indeed, Ascend filed a creditor's claim in the LRH bankruptcy years later claiming it was owed $600,000 by LRH, and is still listed as a creditor in the proceeding. *See* https://dm.epiq11.com/case/lrh/claims, (last visited on July 3, 2023)(showing Ascend Professional Consulting, Inc. as a claimed creditor of Rockdale Blackhawk LLC, the parent company to LRH, for a claim of $600,611.77.)

Thus, more than five years prior to the date of the Indictment, LRH's termination notice was received by Ascend, all payments from LRH to Ascend were complete, and LRH took no further action consistent with participation in the alleged LRH conspiracy. The steps taken by LRH are a textbook example of an affirmative act to discontinue membership in a conspiracy. LRH did everything necessary to affirmatively remove itself from the conspiracy.

Messrs. Madison and Cook anticipate the government will contend the object of the alleged conspiracy was for the doctors to receive the money and the conspiracy did not end on December 7, 2016, because there was one check sent from Ascend to a company owned by a doctor on January 30, 2017. But that assertion ignores two things.

First, by moving to Stamford hospital, the marketers and doctors ended the LRH conspiracy. It is not enough that LRH and Stamford are alleged to have conspired with the same group of marketers and doctors at different times. For LRH and Stamford to be a part of the same conspiracy, they must have shared a common goal as opposed to competing for the same business end. *See, e.g., United States v Abdelaziz*, 68 F.4th 1, 28 (1st Cir. 2023)(collecting cases that "found that alleged coconspirators lacked a common goal where they pursued similar but distinct ends or

acted based on different motives from those common to the charged conspiracy"). And while competition can exist amongst some co-conspirators in certain circumstances, "that does not make competition irrelevant; indeed, competition cuts against the reasonableness of inferring that the defendants shared a common goal with all the alleged coconspirators here." *Id*. at 30.

Second, removing any doubt, LRH's withdrawal ended its participation in any alleged conspiracy. LRH, Madison and Cook affirmatively withdrew from the purported scheme on December 22, 2016, when LRH terminated its relationship with Ascend. At that point, O'Neal, APC, the marketers, and the doctors ceased to be their alleged conspirators. While a conspirator can potentially be held responsible for the reasonably foreseeable acts of their conspirators during the conspiracy, a conspirator cannot be held responsible for the acts of their *former* co-conspirators. *Salazar*, 751 F.3d at 330.

As a last-ditch effort, the government may also try to argue that because the termination notice sent on December 22, 2016, gave 30 days' notice as required by the contract, LRH and APC were still conspiring as of January 21. But that is a red herring. It is the act of withdrawal and communicating that withdrawal in a way likely to be received by other co-conspirators that is the focus of the withdrawal analysis. Sending a letter directly to an alleged co-conspirator certainly meets that standard. To overcome the withdrawal, the government must allege and prove a new overt act sometime after the withdrawal. The Indictment does not allege an overt act after the withdrawal letter that would extend the alleged conspiracy beyond the end of the 30-day notice period. Moreover, the passive expiration of a 30-day notice period itself is not an overt act by any of the defendants, much less Madison or Cook. LRH withdrew from the alleged conspiracy as of December 22, 2016.

The LRH conspiracy affirmatively ended in December 2016 by the actions of all concerned – O'Neal and others allegedly continued to act in furtherance of the Stamford conspiracy, while LRH and its employees did not. In addition to the natural termination of the alleged LRH conspiracy, LRH, Madison, and Cook did everything necessary to affirmatively withdrawal from that alleged conspiracy in December of 2016. Holding them hostage to a conspiracy charge because of the delayed actions by a *former* co-conspirator runs afoul to the overall purpose of the statute of limitations.

## Conclusion

Based on the last alleged overt act by LRH – the payment to APC on December 7, 2016 – the government waited too long to bring this Indictment as to Messrs. Cook and Madison. When combined with the facts that: (a) the alleged LRH conspiracy was separate from the alleged Stamford conspiracy (because there can be no rimless hub and spoke conspiracy), (b) the alleged LRH conspiracy ended when the co-conspirators switched their alleged allegiance to Stamford, (c) Madison and Cook affirmatively withdrew from the alleged LRH conspiracy on December 22, 2016, when LRH terminated its contract with Ascend, there can be no doubt that the conspiracy alleged against LRH (and therefore Madison and Cook) ended more than five years before the Indictment was brought. For these reasons, movants respectfully request the Court dismiss the Indictment as to them.

Filed July 3, 2023.　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　PEELE | NIMOCKS LAW FIRM

　　　　　　　　　　　　　　　　　　　　By: */s/ Christopher L. Peele*
　　　　　　　　　　　　　　　　　　　　　　Christopher L. Peele
　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24013308
　　　　　　　　　　　　　　　　　　　　　　chris@peelenimocks.com
　　　　　　　　　　　　　　　　　　　　　　6836 Bee Caves Road, Bldg. 3, Ste. 201
　　　　　　　　　　　　　　　　　　　　　　Austin, Texas 78746

512.417.0334 telephone

*Attorney for Jeff Madison*

By: */s/ Sean McKenna*
   Sean McKenna
   Texas Bar No. 24007652
   SPENCER FANE, LLP
   2200 Ross Avenue, Suite 4800
   Dallas, Texas 75201
   (214) 459-5890
   smckenna@spencerfane.com

*Attorney for Todd Cook*

## CERTIFICATE OF CONFERENCE NOT REQUIRED

Per Local Rule CR-47(a)(3)(A), the foregoing motion requires no certificate of conference as it is a motion to dismiss.

*/s/ Christopher L. Peele*
Christopher L. Peele

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CR-49 and CV-5(a)(7), the undersigned hereby certifies that a motion to seal the declaration and supporting exhibits to this motion has been separately filed.

By: */s/ Christopher L. Peele*
Christopher L. Peele

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2023, a true and correct copy of this document was served on all counsel of record via the court's ECF system, pursuant to the Federal Rules of Criminal Procedure.

By: */s/ Christopher L. Peele*
Christopher L. Peele